## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

    *Plaintiff,*

**v.**

**WAYNE OTTEY,**

    *Defendant.*

_____/

**CASE NUMBER: 00-186-CR-McVerry**

Sealed

## MOTION FOR DISCLOSURE AND PRODUCTION OF
## SPECIFIC *KYLES* AND *BRADY* EVIDENCE, AND
## EARLY RELEASE OF JENCKS MATERIAL AND REQUEST FOR EVIDENTIARY
## HEARINGG

Defendant, Wayne Ottey, by and through his undersigned counsel and pursuant to the

dictates of *Kyles v. Whitley, 115 S.Ct. 1555 (1995), Brady v. Maryland, 373 U.S. 83 (1963),*

*United States v. Bagley, 473 U.S. 667 (1985),* and Fed. R. Crim. P. 16, respectfully moves for an

entry of an order requiring the government to disclose and provide the following specific

information and materials known or that with the exercise of due diligence should be known to

the government and for early disclosure of *Jencks* material. This information is favorable to the

Defendant on the issues of guilt or punishment, including impeachment information and other

material and evidence tending to discredit the government's witnesses, in addition to any other

matters known to the government that may be exculpatory or otherwise favorable to the

defendant.

    The    following    documents    and    information    regarding    the    cooperating

witness(s)/unindicted co-conspirators in this case are requested:

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

A. The name and address of each cooperating witness/unindicted co-conspirator;

B. The case number and name of the prosecutions in which the cooperating witness utilized in this case has previously been utilized as a cooperating witness[1];

C. The case names and numbers of any trials or evidentiary hearings at which the cooperating witness has testified concerning his own prior criminal activity, payments or rewards provided him by the government, efforts made to induce others to participate in criminal activity, or other purported law-enforcement related matters;

D. Any ledger, sheet, or other document which details the sums paid the cooperating witness or his family in this and other cases in which the informant assisted the government and the purpose of each such payment;

E. Any information, whether or not memorialized in the memorandum, agent's report or other writing, regarding promises of immunity, leniency, preferential treatment or other inducements made to the cooperating witness or any family member, friend or associate of the informant in exchange for the informant's cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, promises or expectancies regarding payments for expenses or testimony or eligibility for any award or reward; In addition to information regarding payments, promises of immunity, leniency, preferential treatment or other inducements made to the government

---

[1] For purposes of this motion the term cooperating witness also includes informant, and unindicted co-conspirator.

United States of America v. Wayne Otley
Case No.: 00-186-CR-McVerry

witnesses, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend or associate of any prospective witness in exchange for said witness cooperation.

F. Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc, by INS) made by the government to any prospective government witness or family member or associate of the witness, including information as to the underlying conduct precipitating such investigations.

G. Any statement made, information or document provided by a prospective government witness that conflicts in part or in whole with: (1) the statement of another prospective witness, (2) a prior statement made by the same government witness with regard to the subject matter of the expected trial testimony of witness, or (3) any other document or witness.

H. The name and current whereabouts of any witness to the underlying of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of an interview with such a witness.

I. Any report, document or information which details the criminal activities of the cooperating witness which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute;

3

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

J.  FBI rap sheet, NCIC printout, NADDIS, EPIC, NLETS, ATS, TECS, IDENT and any other records available to the government reflecting the arrest, conviction and investigative history of the cooperating witness;

K.  Information concerning prior misconduct by the cooperating witness in the performance of his role as an informant including: any prior refusal of the informant to testify for or assist the government; any prior allegation that the informant entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the informant by any law enforcement agency;

L.  Information concerning misconduct by the cooperating witness other than in his role as an cooperating witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of the informant, such as uncharged criminal conduct or fraud;

M.  All information, records, and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to:

   1.  Any state or federal law enforcement officer or agency,

   2.  Any state or federal grand jury,

   3.  Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding;

N.  Information reflecting the nature and extent of assets obtained by the

4

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

informant in connection with his illegal activities over the past ten years;

O. Any "records" maintained by law enforcement agencies relating to the cooperating witness utilized in this case, including records that the witness was:

    1. Given a code name,

    2. Given assumed/false identity,

    3. Reasons for cooperation,

    4. Given a polygraph exam,

    5. Briefed on entrapment,

    6. Contracts executed with any law enforcement agency,

    7. Any release forms executed by the witness,

    8. Records revealing the witness was advised to pay Federal Income Taxes,

    9. Records that he could not violate the law,

    10. Records which require him to protect their/his false identity,

    11. Records that the witness cannot use any illegal drugs,

    12. Records that the witness consented to recording any conversation with any party;

    13. Contingency Fee Agreement

P. If given a polygraph exam, the results of any polygraph examination performed on any potential government witness as well as any information

5

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

concerning the failure of any potential government witness to submit to a polygraph examination;

Q. Any government agency files or other information revealing matters relevant to the cooperating witness' credibility, mental or physical health, narcotic or alcohol use, or any other dependency;

R. All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect and testify about the events giving rise to the charges filed in this case including impairments of sight, hearing, memory, language, or any other physical or psychological disability;

S. All information and records indicating that any prospective government witness (1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years;

T. All information and records indicating that the prospective government witness (1) may have used cocaine, marijuana, another controlled substance, used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any substance abuse problem (including alcohol) at any time within the last five years.

6

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

U. Applicable records of the United States Probation Department if the witness

has been placed on probation or a Pre-Sentence Investigation "PSI" has been

conducted;

### MEMORANDUM OF LAW

"[T]he use of informants to investigate and prosecute persons is fraught with peril." .... "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom."*United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).

A prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the trust-seeking mission of our criminal justice system.... Because the government decides whether and when to use such witnesses, and what, if anything, to give them for their service, the government stands uniquely positioned to guard against perfidy. By its action the government can either contribute to or eliminate the problem. Accordingly, we expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery. *United States v. Bernal-Obeso, 989 F.2d 331, 333-34 (9th Cir. 1993).*

Evidence which is material either to the guilt or punishment of the defendant must be

disclosed to the defense in a timely manner. *Brady v. Maryland, 373 U.S. 83, 87 (1963).*

Evidence that will "play a role in uncovering admissible evidence, aiding witness preparation,

corroborating testimony, or assisting impeachment or rebuttal" must be provided by the

government. *United States v. Lloyd, 992 F.2d. 348, 351 (D.C.Cir. 1993)* See also *United States*

*v. Bagley, 473 U.S. 667 (1985).*

"Taken together, this group of constitutional privileges delivers exculpatory evidence into

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

the hand of the accused, thereby protecting the innocent from erroneous conviction and ensuring

the integrity of the criminal justice system." *California v. Trombetta, 467 U.S. 858, 867 (1984).*

If this material evidence exists in the hands of the government or an agent of the State, the failure

to disclose this evidence is a violation of the precepts of *Brady v. Maryland, supra;* See also,

*Kyles v. Whitney, 115 S.Ct. 155, 1567 (1995).* "In fact, an individual prosecutor has a duty to

learn of any favorable evidence known to the others acting on the government's behalf in the

case, including the police." *Id.*

## PRIOR UTILIZATION OF AND TESTIMONY BY INFORMANT/COOPERATING WITNESS

Information regarding the prior utilization of the witness is material and favorable within

the terms of *Brady v. Maryland, 373 U.S. 83 (1963),* where it reveals the informant's *modus*

*operandi* in setting up criminal transactions and in inducing other persons to participate in

criminal activity. *Johnson v. Brewer, 521 F.2d 556, 563 (8th Cir. 1975).* Experience has shown

that where an informant utilizes undue persuasion in one case to induce an individual to

participate in a criminal offense, he is likely to use the same tactic in other cases. *United States v.*

*McClure, 546 F.2d 670, 673 (5th Cir. 1977).* In *McClure,* the conviction was reversed and

remanded due to the trial court's exclusion of "Fed. R. Evid. 404(b) evidence of a systematic

campaign" by the informant to induce other persons to engage in illegal activity. *Id.,* 546 F.2d at

672, 673. "[I]n the case before us it was the defendant who sought to introduce evidence of the

informant's scheme. His right to present a vigorous defense required the admission of the

proffered testimony." *Id.*

Evidence of the informant's offering the defendant an inducement to commit any offense

8

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

or to effect the defendant's predisposition is evidence that directly substantiates an entrapment defense. *United States v. Suarez, 939 F.2d 929, 932 (11ᵗʰ Cir. 1991); State v. Florez, 134 N.J. 570 (N.J. 1994)* **(reversing one defendant's conviction and remanding both defendants' for retrial based on evidence of informants' inducements).** The Supreme Court, in *Matthews v. United States, 485 U.S. 48 (1988)* and more recently in *Jacobson v. United States, 503 U.S. 540, 550 (1992),* reaffirmed the traditional entrapment defense and held that the defendant may proceed with such a defense exclusively or in the alternative.

Such evidence is also discoverable, pursuant to *Giglio v. United States,* 405 U.S. 150 (1972) and *United States v. Bagley, 473 U.S. 667 (1985),* to aid in the impeachment of a witness. Similarly, the prior testimony of the informant on themes material to his service as an informant should be disclosed where the defense proposes to examine the informant as to those themes at trial. *Johnson v. Brewer, 521 F.2d at 563.* In *United States v. Cohen, 888 F.2d 770, 776-777 (11ᵗʰ Cir. 1989),* the Eleventh Circuit recognized the importance of such evidence, reversing the conviction where the trial court had excluded evidence offered under Fed. R. Evid. 404(b) that the primary informant had previously concocted and managed a fraudulent scheme.

In *Mesarosh v. United States, 352 U.S 1 (1956),* the Supreme Court reversed the defendant's conviction and remanded for a new trial to allow the defendant to present previously undisclosed evidence that the government's key witness testified falsely in similar, but unrelated proceedings. The Eleventh Circuit reaffirmed the vitality of the *Mesarosh* decision in *United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11ᵗʰ Cir. 1990),* holding that the government may not withhold evidence that a witness has made prior false statements in a matter within the jurisdiction of a federal agency. *Cf. United States v. Williams, 500 F.2d 105, 108 (9ᵗʰ Cir. 1974)*

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

(granting a new trial under *Mesarosh* to allow defendant to present to the jury evidence of a

witness' previous false statements in other proceedings).

## PREFERENTIAL TREATMENT GIVEN AND THREATS MADE
## TO INFORMANT/COOPERATING WITNESS/UNINDICTED CO-CONSPIRATORS,
## INCLUDING MONIES PAID AND PROMISES OF FINANCIAL AWARD

By his request, the defendant seeks a full record of all considerations given to the

informant and his family as a result of his cooperation in this case as well as any other case in

which the informant has provided services.

Such detailed information and records are needed to demonstrate the motive of the

witness and are discoverable. *Giglio v. United States, 405 U.S. 150 (1992); United States v.

Williams, 954 F.2d 668 (11th Cir. 1992).*

The witness' motive to testify in favor of one party and against another is a matter open

to discovery and introduction into evidence. Fed. R. Evid. 608.

Evidence that the government has threatened a potential witness to obtain the witness'

cooperation, is admissible, and may demonstrate unconstitutional interference with the

defendant's right to free access to witness. *United States v. Hendricksen, 564 F.2d 197, 198 (5th

Cir. 1977); United States v. Heller, 830 F.2d 150, 154 (11th Cir. 1987).*

The Defendant further seeks information as to threats or promises made to the witness or

his family to motivate his cooperation. The threats/benefits evaluation is not limited to the

informant alone. *United States v. Partin, 493 F.2d 750, 757 (5th Cir. 1974).* Such *Giglio* material

is discoverable to allow defense counsel to establish possible bias or hostility of the informant. It

is proper impeachment to question a cooperating witness about the dismissal of charges against

him or other preferential treatment given to his family. *United States v. Nickerson, 669 F.2d*

10

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry
*1016, 1018 (5ᵗʰ Cir. 1982).*

Similarly, unconsummated promises of financial or other awards or benefits are discoverable as to the informant including any Contingency Fee Agreement. *United States v. Cuellar, 96 F.3d 1179 (9ᵗʰ Cir. 1996); United States v. Friedman, 854 F.2d 535, 563 (2ⁿᵈ Cir. 1988).* (Holding that the effect of the Contingency Fee Agreement on the witness' credibility is an issue for the jury). Thus, where the informant harbors an expectation of a future financial award for his services obtaining a conviction, such evidence is crucially important to the defense. *United States v. Williams, 954 F.2d 668, 672. (11ᵗʰ cir.1992).* Defendant seeks disclosure of any promise, formal or informal, that would lead the informant to have an expectation of an award in the instant case.[2]

## CONFLICTING WITNESS STATEMENTS

The Conflicting statement of a witness must be turned over to the Defendant. *Kyles v. Whitley, 115 S.Ct. 1155 (1995).* In *Schneider v. Estelle, 552 F.2d 593, 595 (5ᵗʰ Cir. 1977),* the court held that the government's failure to disclose an eyewitness' prior statement that was inconsistent with the testimony of the government's key trial witness was reversible error. Also, in *United States v. Martino, 648 F.2d 367, 384 (5ᵗʰ Cir. 1981),* the court stated:

> As impeaching evidence, the prior inconsistent statement would fall within disclosure requirements because *Brady* encompasses impeachment evidence as well as evidence favorable to the accused on the issue of guilt.

Additionally the court in *Jones v. Jago, 575 F.2d 1164, 1166 (6ᵗʰ Cir. 1978), cert. denied 439 U.S. 883 (1978),* found that an eyewitness' statement to the government, while not expressly

---

[2] 28 U.S.C. 524 and 19 U.S.C. 1619 allows the government at the government's discretion to pay informants, often referred to as moiety, 25% of the value of any property forfeited to the government or $250,000.00, for each such forfeiture. There is no prohibition paying more than $250,000.00, provided payments involve more than one case.

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

exonerating the defendant, and made no reference to the defendant's presence or participation in the offense, was *Brady* material and that the failure to disclose such a statement required the reversal of the conviction. *Id.* At 1164. This type of *Brady* material, though negative or neutral in character, may be the key to a favorable defense.

Even though such a defense-favorable or neutral statement may otherwise be protected from disclosure under the *Jencks* Act, the government is under a due process obligation to disclose the information to the defense before trial and in a timely manner. *United States v. Campagnulo, 592 F.2d 852, 859 (5th Cir. 1979).*

## CO-CONSPIRATOR'S/INFORMANT'S ARREST AND CONVICTION RECORD, UNAUTHORIZED CRIMINAL ACTIVITY AND OTHER MISCONDUCT

An informant's history of criminal activity and other misconduct is relevant to the consideration of his credibility, bias, motive and *modus operandi*. The informant's history and pattern of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals. Such evidence "might easily extend beyond that of mere impeachment." *United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11th Cir. 1990).* In *Espinosa-Hernandez*, the Eleventh Circuit reversed the district court's failure to grant full discovery as to an undercover agent's misconduct relating to the handling of informants. *918 F.2d at 914; Cf. Haber v. Wainwright, 756 F.2d 1520, 1523 (11th cir. 19850)* (prior criminal conduct relevant where witness may have been promised immunity).

Along the same line, the courts have held evidence of the unreliability of an informant witness to be discoverable and highly relevant information. For example, information regarding prior or contemporaneous perjury or bizarre testimony of an informant would be discoverable.

12

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry
*United States v. Mesarosh, 352 U.S. 1 (1956).*

## PRESENTENCE INVESTIGATION "PSI"

While a Pre-Sentence Investigation Report in the hands of the court or the probation

office is not usually producible in response to a discovery motion, *see, e.g., United States v.*

*Trevino, 556 F.2d 1265, 1270-1271 (5th Cir. 1977),* the courts that have directly addressed the

issue have uniformly recognized that such a report is producible if it is in the hands of the

prosecutor and if, upon in camera review, the trial judge determines that it contains exculpatory

or impeachment material. *See, e.g., United States v. Jackson. 978 F.2d 903, 909 (5th Cir. 1992),*

*cert. denied, 113 S.Ct. 2429 (1993)* (holding that defendant has a right to exculpatory or

impeachment material that is contained in [witness] presentence reports as determined by the

district court upon in camera view); *United States v. Moore, 949 F.2d 68, 71-72 (2d Cir. 1991),*

*cert. denied, 112 S.Ct. 1678 (1992)* (approving in camera review of a presentence report to

determine if it contains any exculpatory or impeaching material); *United States v. DeVore, 839*

*F.2d 1330, 1332-1333 (8th Cir. 1988)* (portions(s) of a presentence report determined by the

court, upon in camera review, to contain exculpatory or impeachment material are discoverable);

*United States v. Anderson, 724 F.2d 596, 598 (7th Cir. 1984) (same); United States v. Figurski,*

*545 F.2d 389, 392 (4th Cir. 1976) (same).*[3]

## U.S. PROBATION RECORDS

The defendant has a due process right, to material contained in the files of the U.S.

Probation Office if that material bears on the credibility of a significant witness. *United States v.*

---

[3] Insofar as a witness' presentence report may constitute or contain "a statement" within the meaning of the Jencks act, it may also be subject to Jencks Act production at the appropriate time—assuming, again, that, as here, the report is "held by the prosecution." *See United States v. Sasser, 971 F.2d 470, 479-480 (10th Cir. 1992); United States v. Dansker, 537 F.2d 40, 61 (3d cir. 1976); cert. denied, 429 U.S. 1038 (1977).*

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

*Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988), cert. denied, 489 U.S. 1032 (1989).*

The defendant specially requests the Federal Income tax records of the cooperating witness for each year in which any law enforcement agency provided compensation of any type. *United States v. Shaffer, 789 F.2d 682, 688-689 (9th Cir. 1986).*

Federal law enforcement agencies require informants to pay federal income taxes on monies received. *See* Drug Enforcement Manual, ("DEA") Chapter 66, Section 6612.31.

> The controlling Special Agent will advise all cooperating individuals that they must file Federal income tax returns to include all payments, awards and rewards paid to them by DEA. In additional, the controlling Special Agent will advise the cooperating individual that all payments must be reported as "other income" on their Federal income tax returns, and it will be their responsibility to obtain receipts and other supporting documentation to offset the legitimate expenses from income for possible audit by the Internal Revenue Service. Special Agents will advise all cooperating individuals that their tax liability is a matter strictly between them and the Internal Revenue Service. A statement attesting to this policy will be documented on the back of the DEA-202. Special Agents will remind cooperating individuals of this policy when any payment is made.

The defendant is entitled to these records since he has a good faith basis to believe that the informant has not paid the proper taxes or has misrepresented his earnings in violation of federal law.

## ASSETS OBTAINED BY AN INFORMANT/CO-CONSPIRATOR THROUGH CRIMINAL ACTIVITY

The discovery of any and all assets obtained by the witness through criminal activity is sought as verification of the extent of the informant's prior criminal activity and his motive to protect such assets from forfeiture and taxes. Further, it is submitted that this witness may have committed perjury by failing to report income from criminal activity in his prior income tax

14

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

returns. Such perjury is relevant in the consideration of any evidence presented by the informant. *United States v. Shearer, 794 F.2d 1545, 1551 (11th Cir. 1986), Seventh Circuit Pattern Criminal Instructions,* 3.21 (modified).

## FILES REFLECTING INFORMANT'S/CO-CONSPIRATOR'S BAD CHARACTER

Federal law enforcement agencies maintain at least two separate files on informants. The first is the investigative file, and the second contains the informant or witness' background, payments and false identity.

In *United States v. Brumel-Alvarez, 991 F.2d 1452, 1465 (9th Cir. 1992),* the court held that the failure to disclose an internal DEA memorandum regarding the informant's conduct which impeached the informant's testimony was reversible error. Thus the Court required the disclosure of the memorandum pursuant to the dictates of *Brady, Id.* at 1461.

"An [AUSA] using a witness with an impeachable past has a constitutionally derived duty to search for and produce impeachment information requested regarding a witness." *United States v. Osorio, 929 F.2d 753, 760 (1st Cir. 1991), (citing Giglio).*

## REVIEW OF GOVERNMENT WITNESS'S PERSONNEL FILES

The Government has a duty to examine the personnel files of all Federal agents and the files of any local, state or municipal law enforcement officer who will testify and must disclose information favorable to the defense for impeachment purposes. *United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) citing United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).* "In the event that the Government is uncertain about the materiality of information in its possession, it

15

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

may submit information to the trial Court for an in camera inspection and evaluation..."*Id.* at

1467-68. The Government has a duty to examine the personnel files upon a defendant's request

for production. *See Id.* at 1467. Absent such an examination, it cannot ordinarily determine

whether it is obligated to turn over the files. *Henthorn,* at 31.

Additionally, in *United States v. Deutsch, 475 F.2d 55, 58 (5th Cir. 1973),* the court

compelled disclosure of a postal employee's personnel file where these records revealed the

government witness may have had disciplinary problems. Similarly, in *United States v. Garret,*

*542 F.2d 23, 26 (6th Cir. 1976),* the court reversed the defendant's conviction where the district

court foreclosed discovery and cross-examination as to the personnel records of the law

enforcement officer. This government acted in an undercover capacity. His disciplinary records

evidenced suspected use of narcotics and failure to submit to urinalysis.

## REVIEW OF LAW ENFORCEMENT RECORDS

In *Kyles v. Whitney,* the Supreme Court held that a prosecutor has an affirmative

duty to inquire promptly of all agencies involved in the case whether evidence favorable

to the defense exits. *Id. At 1567-69.* Justice Souter described this duty as follows:

> While the definition of *Bagley* materiality in terms of the
> cumulative effect if suppression must accordingly be seen as
> leaving the government with a degree of discretion, it must also be
> understood as imposing a corresponding burden. On the one side,
> showing that the prosecution knew of an item of favorable
> evidence unknown to the defense does not amount to a *Brady*
> violation, without more. But the prosecution, which alone can
> know what is undisclosed, must be assigned the consequent
> responsibility to gauge the likely net effect of all such evidence
> and make disclosure when the point of "reasonable probability" is

16

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

> reached. This in turn means that *the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case,* including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady, 373 U.S., at 87, 83 S.Ct. At 1196-1197),* the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.
>
> . . . .
>
> This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. *See Agurs, 427 U.S. at 108, 96 S.Ct. at 2399-2400* ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).* And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. . . . The prudence of the careful prosecutor should not therefore be discouraged. *Id.* (emphasis added).

*Kyles* is not the first case to put an affirmative duty on prosecutors to search out impeaching information regarding informer witnesses. In *United States v. Osorio, 929 F.2d 753 (1st Cir. 1991),* the Court held that a prosecutor charged with discovery obligations cannot avoid finding out what 'the government' knows [about the witness] simply by declining to make reasonable inquiry of those in a position to have relevant knowledge . . . . The government, as represented by its prosecutors in court, is under a duty of inquiry regarding information concerning the criminal past of its cooperating witnesses." *Id. At 760.*

The government has an institutional responsibility to canvass all sources relied upon in its prosecution including other law enforcement agencies. *Kyles v. Whitley 115 S.Ct. 1555 (1995).*

17

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

Once placed on notice the government has a responsibility to search all the record depositories of

cooperating law enforcement agencies to obtain information for discovery purposes. *United*

*States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992).*

## IMPAIRMENT OF WITNESS BY PHYSICAL DISABILITY, MENTAL DISABILITY OR SUBSTANCE ABUSE

### PSYCHIATRIC TREATMENT

The Fifth Circuit, in *United States v. Partin, 493 F.2d 750, 762 (5th Cir. 1974), 434 U.S.*

*903, (1977),* explained why a witness' psychological history must be disclosed:

> It is just as reasonable that a jury be informed of a witness mental
> incapacity at a time about which he proposes to testify as it would
> be for the jury to know that he then suffered an impairment of sight
> or hearing. It all goes to the ability to comprehend, know and
> correctly relate the truth.

Particularly relevant is evidence that a witness is undergoing psychiatric treatment. *Id. at*

*116. See United States v. Lindstrom,* 698 F.2d 1154 (11th Cir. 1983), ("Denial of defendants'

access to psychiatric materials is alone sufficient to constitute reversible error".) *United States v.*

*Collins,* 472 F.2d 1017 (5th Cir. 1972); *United States v. Fowler,* 465 F.2d 664 (D.C. Cir. 1972).

## PHYSICALLLY OR EMOTIONALLY IMPAIRED

In *United States v. Collins, 472 F.2d 1017 (5th Cir. 1972), Cert. denied, 411 U.S. 983*

*(1973),* the court acknowledged that a witness narcotics use is material and that the testimony of

a narcotics user is to be considered with caution. Similarly, in *Fowler, 465 F.2d at 664,* the court

held that the defendant was entitled to know whether a government witness was a narcotics user.

18

Additionally, in *United States v. Garner, 581 F.2d 481, 485 (5th Cir. 1978)*, the court reasoned that the testimony of witnesses who had formerly used heroin should be weighted with caution. In the case, the witness had undergone methadone treatment and was no longer using heroin at the time he observed the events of the case however, it was left to the jury to take this information into account in weighing the witness' credibility. *Id.* Thus, it is well established that a defendant is entitled to a jury instruction advising that the testimony of a narcotics user or addict should be considered suspect as to motives and possible impairment of the ability to accurately observe. *See Eleventh Circuit Pattern Criminal Jury Instructions, Special Instruction 1.3; Fifth Circuit Pattern Criminal Jury Instruction 1.17.*

## POLYGRAPH RESULTS

The Eleventh Circuit in *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989), recognized that polygraph examination results are admissible to impeach or bolster a witness' credibility. *See* Fed. R. Evid. 403, 608(b). Thus, polygraph results which tend to show that a witness has made false or conflicting statements to the government are relevant and discoverable. *Id. United States v. Posada*, 57 F.3d 428 (5th Cir. 1995). While admissibility issues may be resolved at trial, the underlying discovery material must be disclosed prior to trial to allow for adequate defense preparation. *Giglio v. United States*, 405 U.S. 150 (1972).

## CO-CONSPIRATOR STATEMENTS

As to Fed. R. Crim. P.12(d)(2), the government may be ordered to disclose specific items of evidence on which it intends to rely at trial. Disclosure of a conspirator's statements intended to be offered under Fed. R. Evid. 801(d)(2)(E) was ordered in *United States v. Thevis, 84 F.R.D.*

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

*47, 56-57 (N.D. Ga. 1979)* to allow the defense an opportunity to effectively meet and cross-examine such hearsay declarations. Evidence relating to the credibility of such statements should also be produced. In *United States v. Enright, 579 F.2d 980, 989 (6th Cir. 1978)*, the court held that "retraction of a previously incriminating and inculpatory statement [which statement was offered at trial by the government under the co-conspirator exception to the hearsay rule] must indeed qualify as material and favorable to the defense."

In *United States v. Christopher, 923 F.2d 1545, 1550-52 (11th Cir. 1990)*, the Eleventh Circuit reiterated that the admissibility and weight to be given to the co-conspirator's hearsay statements are subject to challenge including; the true identity of the speaker, whether the speaker was a co-conspirator at the time the statement was made, whether the statement was made in furtherance of the conspiracy, and whether there are any indicia of reliability of the statement. Fed. R. Evid. 806 provides that a party may attack the credibility of the declarant of a statement offered under Fed. R. Evid.801(d)(2)(E) *Id.* at 150 "by any evidence which would be admissible for those purposes if the declarant had testified as a witness."

Thus, under *Giglio*, the government's duty to disclose "favorable" impeachment material extends to impeachment of the declarant when statements are offered pursuant to Fed. R. Evid. 801(d)(2)(E), 405 U.S. 150. Impeachment can only be prepared if the defendant is at least made aware of the identity of the declarant and the content of the statement. *Cf. Thevis*, 84 F.R.D. at 56; *see also United States v. Kubiak*, 704 F.2d 1545, 1549-1551 (11th Cir. 1983) (indicted co-conspirator's exculpatory statement in *Brady* material).

## WITNESS' RECORD OF ARRESTS AND MISCONDUCT

Pursuant to Fed. R. Evid. 608(b) a witness may be cross-examined as to specific

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

instances of conduct "concerning the witness' character for truthfulness or untruthfulness." Thus, some courts have held that in certain circumstances a witness may be questioned regarding prior arrests which have not led to a conviction. *United States v. Croucher, 532 F.2d 1042, 1045 (5th Cir. 1976)* (informant witness' full arrest record was relevant to demonstrate a possible motive to strike a good bargain with the government).

Similarly, uncharged misconduct of a witness is fair game for impeachment on cross-examination. *United States v. Ray, 731 F.2d 1361, 1364-65 (9th Cir. 1984)* (reversible error to refuse to permit cross-examination of a government witness as to alleged post-plea drug activities); *United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11th Cir. 1990)* (government witness' misconduct bears directly on credibility); *United States v. Cohen, 888 F.2d 770, 776-777 (11th Cir. 1989)* (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) that prosecution witness had previously concocted and managed a fraudulent scheme); *United States v. McClure, 546 F.2d 670, 673 (5th cir. 1977)* (conviction reversed where trial court excluded evidence offered under Fed. R. Evid 404(b) to show that informant had previously entrapped other defendants).

## CONCLUSION

This Indictment charging WAYNE OTTEY with a continuing conspiracy for eleven years (1989-2000) without one co-conspirator being named makes it virtually impossible to prepare for trial in violation of the rights guaranteed by the Sixth Amendment to the United States Constitution to effective assistance of counsel and the Fifth Amendment due process and equal protection guarantees.

The disclosure of the individuals and materials sought <u>must be made well in advance of</u>

21

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry

trial in light of the absence of any remote suggestion of who is involved in this charged

conspiracy.

/s Alan R. Soven *[signature]*
Alan R. Soven (Florida Bar Number 259421)
soven@bellsouth.net
**Law Offices of Alan R. Soven**
777 Brickell Avenue
Suite 1210
Miami, Florida 33131
Telephone: (305) 373-4400
Facsimile: (305) 381-7135
Attorneys for Defendant Wayne Ottey

### Certificate of Service

I hereby certify that on June 11, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Alan R. Soven *[signature]*
Alan R. Soven

### SERVICE LIST

United States of America v. Wayne Ottey
Case No.: 00-186-CR-McVerry
United States District Court, Western District of Pennsylvania

Greg Nescott, AUSA
United States Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219