IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 00-186 |
| | ) | |
| WAYNE OTTEY | ) | |

**GOVERNMENT'S OMNIBUS RESPONSE TO
DEFENDANT'S PRETRIAL MOTIONS**

AND NOW, comes the United States of America by its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Gregory J. Nescott, Assistant United States Attorney, and respectfully submits the government's response to the defendant's pretrial motions.

The defendant Wayne Ottey has filed the following pretrial motions:

    I.     Motion to Compel Production of Documentary Evidence
    II.    Motion for Disclosure and Production of Specific Kyles
           and Brady Evidence, and Early Release of Jencks
           Material
    III.   Defendant's Request for Expert Discovery
    IV.    Motion for a Bill of Particulars

The Government now responds to each motion.

**I.     Motion to Compel Production of Documentary Evidence**

The defendant seeks the production of certain documentary evidence material to his defense, or that the government intends to use at trial.

In its Rule 16.1 materials provided to the defense on February 9, 2007, the government advised that defense counsel would:

> [B]e permitted to inspect and copy all
> tangible objects, books, papers,
> documents, buildings or places which are
> in the possession, custody or control of
> the government and (a) are material to
> preparation of defendant's defense, (b)
> are intended for use by the government as
> evidence in chief at trial, or (c) were
> obtained from or belong to the defendant.

That offer remains open.

As to the materials specifically requested in the defendant's instant motion, including airline and hotel records, Western Union wire transfers, photographs, and a driver's license, the government will provide copies of those documents within a reasonable period of time, but likely no later than 14 days after the Court rules on this motion.

As to any other documents not specifically requested at this time, the government will provide the defense copies of those documents it intends to use at trial, prior to trial.

**II.     Motion for Disclosure and Production of Specific Kyles and Brady Evidence, and Early Disclosure of Jencks Material**

Several of the defendant's pretrial motions relate to discovery requests under Rule 16 of the Federal Rules of Criminal Procedure.  Before responding to each of these requests, the government will briefly discuss the law in regard to pretrial discovery generally.

2

The law is well-settled that "[c]riminal pretrial discovery is, of course, vastly different from discovery in civil cases." United States v. Ramos, 27 F.3d 65, 67-68 (3d Cir. 1994). "In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." Id. Accord, United States v. Casseus, 282 F.3d 253, 257 (3d Cir. 2002) (affirming district court's denial of defense request for disclosure and interview of eyewitness/anticipated government trial witness; "[I]t is clear that a criminal defendant does not have the right to full discovery of the government's case.").

The United States accepts its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Rules 12 and 16 of the Federal Rules of Criminal Procedure, and the Jencks Act, 18 U.S.C. § 3500. Further, the United States is willing to cooperate with any reasonable request by the defendant.

The government notes, however, that its obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. That rule requires the government to produce certain categories of

information upon request of the defendant:  1) the defendant's
statements that are in written or recorded form (including grand
jury testimony) and any oral statement given by the defendant to
a person then known by the defendant to be a government agent
(Rule 16(a)(1)(A)); 2) the defendant's prior criminal record
(Rule 16(a)(1)(B)); 3) all documents and tangible objects within
the possession, custody or control of the government which are
material to the preparation of the defendant's defense or are
intended for use by the government as evidence in chief at the
trial, or were obtained from or belong to the defendant (Rule
16(a)(1)(C)); 4) results or reports of physical or mental
examinations or other types of scientific tests in the
government's possession which are material to the preparation of
the defense or are intended for use by the government as evidence
in chief at the trial (Rule 16(a)(1)(D)); and 5) a written
summary of expert testimony the government intends to use during
its case in chief at trial (Rule 16(a)(1)(E)).

        Under <u>Brady v. Maryland</u>, <u>supra</u>, and its progeny, the
government also has the obligation to disclose exculpatory
evidence -- evidence that is favorable and material to the
defense.  Strictly speaking, Brady "'is not a discovery rule, but
a rule of fairness and minimum prosecutorial obligation.'"
<u>United States v. Starusko</u>, 729 F.2d 256, 262 (3d Cir. 1984)
(citation omitted).

            Exculpatory evidence includes material
            that goes to the heart of the defendant's

4

> guilt or innocence as well as that which
> might well alter the jury's judgment of
> the credibility of a crucial prosecution
> witness.  Evidence impeaching the
> testimony of a government witness is
> exculpatory when the credibility of the
> witness may be determinative of a criminal
> defendant's guilt or innocence.  If the
> exculpatory evidence "creates a reasonable
> doubt" as to the defendant's culpability,
> it will be held to be material.

Id. at 260 (citations omitted).  See also United States v. Bagley, 473 U.S. 667, 682 (1985) (Evidence is "material" when it is reasonably probable that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different.")  Brady material must be disclosed "in time for its effective use at trial."  United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984).  Accord, United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988).

The United States is unaware of the existence of any directly exculpatory Brady material pertaining to the defendant. Should such material be discovered, it will be provided to the defense upon receipt.

The Jencks Act, 18 U.S.C. § 3500, requires the government to provide the defense with statements of witnesses that the government intends to call at trial.  The Jencks Act protects discovery of such witnesses' statements, however, "until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  See also United States v. Ramos, 27 F.3d at 68; United States v. Campagnuolo, 592 F.2d 852,

858 (5th Cir. 1979); <u>United States v. Horsley</u>, 621 F. Supp. 1060, 1067-68 (W.D. Pa. 1985), <u>aff'd</u>, 831 F.2d 286, 288 (3d Cir. 1987); <u>United States v. Fischbach & Moore, Inc.</u>, 576 F. Supp. 1384, 1393 (W.D. Pa. 1983). The Third Circuit has held that a defendant's right to a fair trial is "fully protected" if <u>Brady</u> material relating to the credibility of government witnesses is disclosed "the day that the witness testifies." <u>Higgs</u>, 713 F.2d at 44.

The United States acknowledges, however, that strict adherence to the dictates of the Jencks Act could cause delays at trial. Therefore, the government will voluntarily turn over Jencks Act materials one week prior to trial, to ensure that unnecessary interruptions or delays are avoided.

Outside of the aforementioned statutes, rules, and case law, a defendant has no general constitutional right to pretrial discovery. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977). Those rights conferred by statute, rule, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. <u>United States v. Fiorvanti</u>, 412 F.2d 407, 411 (3d Cir.), <u>cert. denied</u>, 396 U.S. 837 (1969).[1] Thus, <u>Brady</u>, Rule 16, and the

---

[1]  <u>Accord</u> Fed. R. Crim. P. 16(a)(2) **Information Not Subject to Disclosure** ("Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1) [of Rule 16], this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.").

Jencks Act should be construed as limits on discovery, within which limits the trial court may exercise its discretion. <u>See</u> <u>United States v. Randolph</u>, 456 F.2d 132, 136 (3d Cir.), <u>cert.</u> <u>denied</u>, 456 U.S. 132 (1972); <u>Fischbach & Moore, Inc.</u>, 576 F. Supp. at 1393 (<u>Brady</u> is not a discovery device); <u>United States v.</u> <u>Deerfield Specialty Papers</u>, 501 F. Supp. 796, 819 (E.D. Pa. 1980) (pretrial discovery rules are not meant to permit "fishing expeditions" into government case files); <u>cf</u>. <u>United States v.</u> <u>Adams</u>, 759 F.2d 1099, 1111 (3d Cir.) (discovery is within the discretion of the district court), <u>cert.</u> <u>denied</u>, 474 U.S. 906, 971 (1985); <u>United States v. Liebert</u>, 519 F.2d 542, 548 (3d Cir.) (defendant's discovery demands must be reasonable), <u>cert.</u> <u>denie</u>d, 423 U.S. 985 (1975).

The defendant here seeks pretrial disclosure of information that, in some cases, goes beyond the types of discovery permitted in federal criminal cases. The United States now responds to each of the requests in the Motion for Disclosure and Production as follows, with each paragraph relating to the defendant's requests, as designated by letter:

A.  The name and address of each cooperating witness/unindicted co-conspirator.

The identity of each witness the government intends to call at trial will be provided with the Jencks Act materials.

B.  The case number and name of the prosecutions in which the cooperating witness utilized in this case, including

informants and unindicted co-conspirators, has previously been utilized as a cooperating witness.

This request far exceeds the scope of Rule 16, and should be denied. To require the government to disclose other, unrelated cases in which witnesses or informants in the instant case cooperated would create a chilling effect on law enforcement, and is not authorized by Rule 16.

C. The case names and numbers of any trials or evidentiary hearings at which the cooperating witness has testified. . . .

This request for information about other, unrelated cases is beyond the scope of Rule 16, and should be denied.

D. Any ledger, sheet or other document which details the sums paid the cooperating witness or his family in this and other cases. . . .

The government recognizes its obligations under Brady to provide the defense with information concerning any financial payments or benefits to government witnesses or their families in this case, and will provide that information within the Jencks materials. As to "other cases", the request is beyond the scope of Rule 16 and should be denied.

E. Any information. . . regarding promises of immunity, leniency, preferential treatment or other inducements. . . .

The government again acknowledges its obligations

under <u>Brady</u> and its progeny, and will provide all such impeachment material related to any benefit or promise to a witness, or his family or friends, at the time of the Jencks submission.

      F.  Any information. . . concerning any actual or implied threats of investigation or prosecution. . . made by the government to any prospective government witness or family. . . .

      No such information is known to exist.  Should it be discovered, it will be produced, pursuant to the dictates of <u>Brady</u>.

      G.  Any statement made. . . by a prospective government witness that conflicts. . . .

      The government acknowledges its obligations under <u>Brady</u>, and will provide any impeachment materials, including conflicting statements.

      H.  The name and current whereabouts of any witness. . whom the government does not anticipate calling as a witness. . .

      The government will provide the identity of any such witnesses who may provide exculpatory or impeachment testimony under <u>Brady</u>.

      I.  Any report. . . which details the criminal activities of the cooperating witness. . . for which the government has elected. . . not to prosecute.

      Any such reports known to the prosecution will be provided pursuant to <u>Brady</u>.

      J.  FBI rap sheet. . .

The government will provide the defense with the criminal rap sheet, if any, for each government witness.

K.  Information concerning prior misconduct by the cooperating witness. . .

Any such known impeachment material will be provided, pursuant to Brady.

L.  Information concerning misconduct by the cooperating witness other than in his role as a cooperating witness. . . .

Any such known impeachment material will be provided, pursuant to Brady.

M.  All information. . . which indicate. . . that any prospective government witness. . . has provided untruthful, false, misleading, incomplete, or inaccurate information. . .

Any such information known to the government will be provided, pursuant to Brady.

N.  Information reflecting the nature and extent of assets obtained by the informant in connection with his illegal activities over the past ten years.

This request is beyond the scope of Rule 16, and should be denied.

O.  Any "records" maintained by law enforcement agencies relating to the cooperating witness utilized in this case. . . .

This request exceeds the scope of Rule 16, and should be denied.  As stated, it demands complete records on any

10

cooperating witness, and is an improper fishing expedition into
confidential files.  Informants and their families frequently
face threats and violence from those against whom they cooperate,
and information about their cooperation - apart from details of
benefits, or facts that must be disclosed under <u>Brady</u> as
exculpatory or impeaching - should not be disclosed to the
defense.

   P.  If given a polygraph exam, the results. . . .

   This request is beyond the scope of Rule 16.
Polygraph results are not generally admissible in the Third
Circuit.

   Q.  Any. . . information revealing matters relevant to
the cooperating witness' credibility, mental or physical health,
narcotics or alcohol use. . . .

   The government will provide any relevant
information within its file or knowledge concerning any drug or
mental impairment of witnesses, pursuant to <u>Brady</u>.

   R.  All information. . . revealing any potential
impairment. . . . of any prospective government witness to
observe. . . .

   The government will provide any relevant
information within its file or knowledge concerning any such
impairment, under <u>Brady</u>.

   S.  All information. . . indicating that any
prospective government witness may have suffered from any mental
or emotional disease.  . . .

The government will provide any relevant information within its file or knowledge concerning any such impairment, under <u>Brady</u>.

T.  All information. . . indicating the prospective government witness may have used. . . a controlled substance. .

Again, the government will provide any relevant information within its file or knowledge concerning any such impairment, under <u>Brady</u>.

U.  Applicable records of the United States Probation Department if the witness has been placed on probation or a Pre-Sentence Investigation, "PSI" has been conducted.

The prosecution has no access to such records, and this request should be denied as being outside the scope of Rule 16.

III.  **Defendant's Request for Expert Discovery**

Other than the testimony of any chemists who may have performed drug analyses in this case, the government doesn't presently anticipate calling any other expert witnesses.

The lab reports provided to the defense represent a written summary of the testimony.  Should the parties be unable to stipulate to the admissibility of such forensic testimony, the defense will be provided with the witnesses' qualifications, within the Jencks materials.

### IV.    Motion for a Bill of Particulars

The defendant now seeks a bill of particulars, demanding, *inter alia*, that the government state when each co-conspirator joined the conspiracy; exact times, dates, and places for each overt act; and the names and addresses of each member of the conspiracy.

This request is without merit, and should be denied.

The Third Circuit has recognized that a trial judge must be given broad discretion in deciding whether or not to grant a Bill of Particulars.  United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989); United States v. Neff, 212 F.2d 297, 309 (3d Cir. 1954).  In Rosa, 891 F.2d at 1066, the Court explained that broad discretion is necessary

> . . . in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of facts . . .  See United States v. Tarvers, 833 F.2d 1068, 1076 (1st Cir. 1987); United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985); United States v. Arenal, 768 F.2d 263, 268 (8th Cir. 1985) (emphasis added)

Case law has established that a bill of particulars is not to be used by defendants as a general discovery tool. United States v. Anderson, 799 F.2d 1438, 1441, (11th Cir. 1986), cert. denied, 480 U.S. 931 (1987); United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985), cert. denied, 475 U.S. 1022

(1986); United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Litman, 547 F. Supp. 645, 654 (W.D.Pa. 1982). Therefore, it should only be granted when an indictment is so vague that it fails to advise the defendant of the charges of which he is accused. United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985); United States v. Addonizio, 451 F.2d 49 (3d Cir. 1972), cert. denied, 405 U.S. 936 (1972); United States v. Steinmetz, 643 F. Supp. 537, 539 (M.D.Pa. 1986); United States v. Bloom, 78 F.R.D. 591, 599 (E.D.Pa. 1977); United States v. Smith, 405 F. Supp. 144, 146 (E.D.Pa. 1975).

There are only three purposes for which the federal appellate courts have found a Bill of Particulars necessary. See United States v. Warren, 772 F.2d 827 (11th Cir. 1985), cert. denied, 475 U.S. 1022 (1986); United States v. Cole, 755 F.2d 748 (11th Cir. 1985); United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983). The Court of Appeals for the Third Circuit in Addonizio clearly stated these purposes as: (1) to inform the defendant of the nature of the charges being brought against him so that he may adequately prepare his defense; (2) to avoid surprise at the trial; and (3) to protect against double jeopardy because of an inadequately described offense. Addonizio, 451 F.2d at 63-64.

Moreover, with respect to conspiracy charges, a Bill of Particulars should neither be utilized to compel the government to provide dates, times, and places regarding the formation of a conspiracy, or to compel information concerning

14

the manner in or date upon which any particular defendant
allegedly entered the conspiracy.  United States v. Butler, 822
F.2d 1191, 1193-1194 (D.C. Cir. 1987); United States v. Carroll,
510 F.2d 507, 509 (2d Cir. 1975), cert. denied, 426 U.S. 923
(1976); United States v. Matos-Peralta, 691 F. Supp. 780, 791
(S.D.N.Y. 1988); United States v. Feola, 651 F. Supp. 1068, 1132
(S.D.N.Y. 1987); United States v. Payden, 613 F. Supp. 800, 817
(S.D.N.Y. 1985); Litman, 547 F. Supp. at 654; United States v.
Boffa, 513 F. Supp. 444, 485 (D. Del. 1980).  Likewise, the
government should not be required to reveal the precise details
of the roles that each defendant and his co-conspirators played
in forming and executing a conspiracy.  Butler, 822 F.2d at 1193-
94; United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir.
1986), cert. denied, 480 U.S. 919 (1987); Litman, 547 F. Supp. at
654; Boffa, 513 F. Supp. at 485.  As the Third Circuit stated in
United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985), "A
Bill of Particulars, unlike discovery, is not intended to provide
the defendant with the fruits of the government's investigation.
[Citations omitted.]  Rather, it is intended to give the
defendant only that minimal amount of information necessary to
permit the defendant to conduct his *own* investigation."

        Finally, in ascertaining whether a Bill of
Particulars is necessary and appropriate, the Court may consider
all of the information which has been provided to the defendant,
not just the information contained in the indictment.  United
States v. Kenny, 462 F.2d 1205, 1212 (3d Cir.), cert. denied, 490

U.S. 914 (1972); <u>Fischbach & Moore</u>, 576 F. Supp. at 1389.  In so doing, the Courts have held a defendant is <u>not</u> entitled to a Bill of Particulars with respect to information already available through other sources.  <u>United States v. Vasquez</u>, 867 F.2d 872, 874 (5th Cir. 1989); <u>United States  v. Bortnovsky</u>, 820 F.2d 572 (2d Cir. 1987); <u>United States v. Rosenthal</u>, 793 F.2d at 1193.

In this case, the defendant was provided with a copy of the indictment, in which he is charged with participating in a conspiracy to distribute and possess with intent to distribute, between 1989 and 2000, in excess of five kilograms of cocaine and 50 grams of crack cocaine, in the Western District of Pennsylvania and elsewhere (Count 1); and conspiracy to launder monetary instruments, from 1993-1997 (Count 3).

The government has now moved to unseal the Indictment, which reveals a named co-conspirator, Wayne Ottey's cousin, Clyde Ottey, who remains a fugitive.  Yet the government agrees that, in fairness, this information alone would not adequately meet the objections raised in the defendant's Bill of Particulars.

However, on February 9, 2007, a detention hearing was held for Wayne Ottey before Magistrate Judge Lisa Lenihan.  A proffer of the testimony of IRS Special Agent Kevin O'Donnell and his cross-examination revealed in detail the outline of the conspiracy charged here:

1.  Wayne Ottey was an organizer of a conspiracy that distributed cocaine into the Western District of Pennsylvania

between 1989-January 2000.

     2.  The cocaine was brought into the WDPA from California and other locations.

     Grand jury testimony and/or witness statements established the following:

     3.  (Witness 11) By 1999, W-11 had begun transporting cocaine from Oakland, CA to the WDPA for an associate of Wayne Ottey's.  In November 1999, W-11 saw Wayne Ottey wrapping up kilos of cocaine in a house in Oakland, CA, covering the cocaine with peanut butter and pepper, in an attempt to deter drug dogs. W-11 became a drug courier for Ottey in November 1999.  W-11 flew with Ottey to California; stayed at a Comfort Inn in Oakland, CA; picked up five kilograms of cocaine at an Oakland home; returned with Ottey - who was using the name Brendant/Brandon Green, to the Baltimore/Washington International Airport (BWI); and drove with Ottey and the drugs to a home in Penn Hills, PA.  Ottey told W-11 he was a cocaine wholesaler who traveled from the Washington, D.C. area about once a week to distribute cocaine, and said that he and his cousin Clyde Ottey were the main investors in the drug business.  On another trip as a courier for Ottey in December 1999, W-11 and Ottey returned to the Comfort Inn in Oakland, CA, and later picked up five kilos of coke.  Upon return to the BWI airport in Maryland, W-11 was caught with the five kilos.  Wayne Ottey and his cousin Clyde Ottey, who were both at the airport to meet W-11, escaped apprehension.

4. Agent O'Donnell's proffer confirmed that five kilos of coke were seized at BWI that day from W-11; that airline records confirmed travel for W-11 and Wayne Ottey - traveling as Brendant Green - in November and December 1999 to California; that records of the Comfort Inn in Oakland, CA confirmed three stays at that hotel in November/December 1999 by Ottey as "Brendant Green"; and that the Illinois photo driver's license used by Ottey to travel and register at the Comfort Inn bore the photograph of Wayne Ottey.

5. (Witness 14) W-14 saw Wayne Ottey at a MacArthur Boulevard home in Oakland, CA about 10 times in 1999, repackaging kilos of cocaine into suitcases, for couriers.

6. Agent O'Donnell's proffer confirmed that, on January 4, 2000, agents found five empty kilogram wrappers for cocaine and drug packaging paraphernalia in the trash outside the MacArthur Boulevard home. A search warrant thereafter discovered $112,000 in cash in a car belonging to the resident of that home.

7. (Witness 6) W-6 testified under oath in an earlier proceeding that he had sold cocaine and crack for Wayne Ottey in the WDPA for years, from around 1989-1993. W-6 also sent approximately $100,000 in drug proceeds in wire transfers to Wayne Ottey and his cousin and co-conspirator Clyde Ottey.

8. (Witness 7) W-7 received kilos of cocaine from Wayne Ottey on at least three occasions in the mid-1990's.

9. (Witness 16) W-16 saw Wayne Ottey with a kilo of cocaine in 1999, and saw Ottey in possession of credit cards in

18

the name of Brandon or Brandant Green.

   10. (Witness 18) W-18 saw Wayne Ottey wrap $50-100,000 in cash for transport to California about twice a month around 1995-1996, and personally counted $50,000 for Ottey.

   In addition to this wealth of detailed information provided at the detention hearing, the defendant has now requested and will be provided, *inter alia*, copies of the corroborating wire transfers, hotel records, and airline tickets, as well as the photo of the defendant on drivers' license records for "Brandant Green", the Illinois alias he used.

   In addition, the defendant received in February 2007 a copy of a crime lab report (related to Count 2 of the instant indictment) which reflects the sale of 250 grams of crack cocaine by co-conspirator Clyde Ottey on February 25, 1997, to a cooperating witness.

   These disclosures should well satisfy any reasonable objection that the defendant doesn't understand the nature of the charges against him, so as to allow him to properly prepare for trial, or that the defendant could be "surprised" at trial by unanticipated evidence.  Although there is no requirement in the Third Circuit that overt acts be alleged within a drug conspiracy indictment, the many over acts revealed at the detention hearing were detailed and helpful to the defense.

19

In light of the wealth of evidence already presented to the defendant, and considering the case law discussed above, the motion for a bill of particulars should be denied.

                    Respectfully submitted

                    MARY BETH BUCHANAN
                    United States Attorney

                s/ Gregory J. Nescott
                    GREGORY J. NESCOTT
                    Assistant U.S. Attorney
                    PA 27331
                    U.S. Attorney's Office
                    U.S. Post Office & Courthouse
                    700 Grant Street, Suite 400
                    Pittsburgh, PA 15219
                    Office: 412-644-3500
                    Fax: 412-644-2645
                    gregory.nescott@usdoj.gov