**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF PENNSYLVANIA**

**Case Number: 00-186-CR**

UNITED STATES OF AMERICA

*Plaintiff,*

v.

WAYNE OTTEY,

*Defendant.*

_________________________________/

**MOTION TO DISMISS INDICTMENT**

The Defendant, WAYNE OTTEY, by and through his undersigned counsel, and pursuant to the Sixth Amendment to the United States Constitution, and Rule 12 (b)(3)(A) of the Federal Rules of Criminal Procedure, moves this Honorable Court to Dismiss the Indictment and as grounds would state as follows:

**HISTORICAL FACTS**

1. The United States government filed a sealed Indictment in January, 2000.

2. The Indictment in count one charges WAYNE OTTEY with conspiracy to possess and distribute cocaine in violation of 21 USC §963. Count three of the Indictment charges WAYNE OTTEY with conspiracy to commit wire transactions from 1993 to July 1997 in violation of 18 USC 1956 (h). The Indictment charges that the conspiracy allegedly commenced in 1989 and ended around January 2000.

3. In January, 2007, WAYNE OTTEY was a passenger in a vehicle stopped for a traffic infraction by the Virginia State Police. As a matter of routine, Mr. Ottey was asked for and gave his name as Wayne Ottey, his date of birth and his social security

number. He was arrested based upon the outstanding warrant for his arrest arising out of the Indictment filed in 2000.

4. Approximately eleven (11) years had elapsed between the time the drug conspiracy in the Indictment allegedly began and the time the Indictment was filed. Seven (7) more years elapsed between the date the Indictment was filed and the date WAYNE OTTEY was arrested.

5. During the seven years between January, 2000 and January, 2007, (the time between the filing of the Indictment and his arrest) WAYNE OTTEY lived openly, in his own name, at his mother's family home in Birmingham, England.

6. In January, 2000 the instant Indictment was filed <u>under seal</u>. FBI agents thereafter sought to arrest Mr. Ottey. They learned he owned a home at 5208 Croaten Place in Maryland where he lived with Janet McCutcheon, his children's mother. Agents interviewed Ms. McCutcheon and learned from her that Mr. Ottey was living in Birmingham, England. They knew by his Alien Registration card that he was a citizen of the United Kingdom and had a United Kingdom passport in his name. Wayne Ottey had departed from Dulles International Airport in Washington, D.C. in November of 1999 under the name of WAYNE OTTEY and flown to London. The FBI also learned, quite significantly, on Mr. Ottey's "green card" application (when he arrived in this country) that he gave his home address, the home owned by his mother in Birmingham, England. The FBI admitted they had an address for Mr. Ottey in Birmingham, England. Although the FBI knew that Mr. Ottey was a citizen of the United Kingdom, had flown there in November, 1999 and resided in Birmingham, England, the government made **no effort** to locate him. No phone calls were placed to his mother's home, although a telephone

number was in WAYNE OTTEY'S name. No local authorities in Birmingham, England were contacted. No one went to his house, knocked on his door and asked, "Is Wayne Ottey here?" He had been living there for almost seven years! Mr. Ottey had no knowledge there was a warrant for his arrest, particularly since the Indictment was sealed.

While living openly and within the law in Birmingham, England:

a) WAYNE OTTEY had a Lloyds TSB telephone bill in his name (Exhibit A);

b) an npower electric bill in his name (Exhibit B);

c) Birmingham City Council Tax bill in his name (Exhibit C);

d) a British Gas bill in his name (Exhibit D);

e) social security benefits in his name (Exhibit E);

f) a Severn Trent Water bill in his name (Exhibit F)

All of the bills were for the same address: 58 Clipston Road, Birmingham B8-3HJ.

When he was arrested as a passenger in a vehicle he gave his name as Wayne Ottey. He had no false identification or passports with other names on his person and he had about sixty three ($63.00) dollars in cash on his person.

At the Pre-Trial Detention Hearing on February 9, 2007, Magistrate Judge Lenihan found that Mr. Ottey did not know there was a warrant for his arrest. She denied the government's Motion for Pre Trial Detention and permitted Mr. Ottey to be released from custody pending trial.

> "There really isn't a whole lot of evidence that efforts were made to find him or to serve him with the arrest warrant…I don't have the evidence that a great effort was made to locate him and that he actively fled from service of the warrant…He

> wasn't on probation or parole at the time of the offense charged." Magistrate Judge Lisa Lenihan, Pre-Trial Detention hearing, February 9, 2007 at page 42 (Exhibit G).

## APPLICABLE CASE LAW
## *DOGGETT V. US, 505 US 647, 112 S. CT. 2686, 120 L. ED2D 520 (1992)*

7. In 1980, Defendant Doggett was indicted for conspiring to import and distribute cocaine. The DEA's principal agent Douglas Driver investigating the conspiracy told the United States Marshal's Service that the DEA would oversee the apprehension of Doggett. In an attempt to arrest Doggett at his home in North Carolina, the DEA was told by Doggett's parents that he had left for Colombia four days earlier. In 1981, DEA Agent Driver learned that Doggett was under arrest on drug charges in Panama. The government never filed extradition papers to hold him. The Panama government eventually released him and Doggett returned to Colombia to live with his aunt for several months. In September of 1982, Doggett re-entered the United States unhindered, and settled down in Virginia. He married, earned a college degree, and lived openly under his own name and stayed within the law. On September 5, 1988, nearly 8 ½ years after his indictment, Doggett was arrested when the US Marshal's ran a credit check on several thousand people with outstanding warrants. Doggett was found within minutes. Doggett was convicted which was upheld by an Appellate Court. In an opinion delivered by Justice Souter, the United States Supreme Court overturned the appeals court and dismissed the conviction. The issue before the court was whether the eight and one half year delay between the Defendant's indictment and arrest violated his Sixth Amendment right to a speedy trial. The court held that the delay did violate his right to a speedy trial. The court noted that a delay between indictment and arrest of <u>over one year</u> is enough to be presumptively prejudicial. The Supreme Court reasoned that when the

delay is clearly attributable to the negligence of the government, the delay is not a justifiable one and it prejudices a defendant's ability to prepare an adequate defense. Because simple investigative procedures could have been used to locate Doggett it was clearly the negligence of the government that caused the delay. Furthermore, the court reasoned that Doggett had not waived his right to a speedy trial.

## LEGAL ARGUMENT

8. The delay between the Indictment and arrest of WAYNE OTTEY was seven years. The government's failure to prosecute him earlier violates his right to a speedy trial. This lapse of time is so great as to create a presumption of prejudice against the Defendant. There is a strong likelihood of faded memories which creates substantial barriers to a defense against the charges. The Defendant need not present affirmative evidence of prejudice because it must be presumed. *Doggett, supra*.

9. The delay between indictment and arrest was due to gross negligence by the government. WAYNE OTTEY lived openly in his own name. Simple investigative procedures could have led the government to easily locate and apprehend him. A standard driver license search would have led the police directly to him.

10. The government did not act diligently or actively pursue apprehending WAYNE OTTEY as quickly as possible after the indictment was filed to ensure that his right to a speedy trial was not violated. The unjustified pre-arrest delay of seven years violates the Defendant's Sixth Amendment right to a speedy trial. During the seven years between the Indictment and his arrest, WAYNE OTTEY was unaware of the Indictment. Government negligence is an unacceptable reason for delaying a criminal prosecution. *Doggett, supra at 531-32*.

11. The delay makes it impossible for the Defendant to be ensured a fair trial. The faded memories due to the delay seriously hinder the Defendants ability to defend himself against the charges alleged in the indictment particularly when the alleged conspiracy began 18 years ago!

WHEREFORE, the Defendant, WAYNE OTTEY, moves this court to dismiss this Indictment for violation of his Sixth Amendment right to a speedy trial.

**/s Alan R. Soven**
Alan R. Soven (Florida Bar Number 259421)
soven@bellsouth.net
**Law Offices of Alan R. Soven**
777 Brickell Avenue
Suite 1210
Miami, Florida 33131
Telephone: (305) 373-4400
Facsimile: (305) 381-7135
Attorneys for Defendant Wayne Ottey

**Certificate of Service**

I hereby certify that on July 6, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Alan R. Soven
Alan R. Soven

SERVICE LIST

United States of America v. Wayne Ottey
Case No.: 00-186-cr

United States District Court, Western District of Pennsylvania

Greg Nescott, AUSA
United States Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Attorney for Plaintiff, United States of America